## Wren, Appellant, *v.* Miller.

Argued April 23, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Waldo P. Breeden,* for appellant.

No appearance was made, nor brief filed, for appellee.

OPINION BY CUNNINGHAM, J., October 6, 1937:

About two o'clock on the morning of April 27, 1930, Edward Wren, plaintiff below and appellant herein, was walking north across Liberty Avenue, an east and west street, in the city of Pittsburgh; his objective was the pavement along the east side of Ninth Street, which intersects Liberty Avenue (a short distance west of Seventh Avenue) but does not cross it. The defendant, Albert O. Miller, was driving his automobile south on Ninth Street and in making a left-hand turn into Liberty Avenue struck and severely injured plaintiff.

The respective widths of Liberty Avenue and Ninth Street were not accurately shown, but the testimony of the defendant indicates that Liberty is approximately sixty feet from curb to curb; each street carries double trolley tracks. A pedestrian crossing was indicated by marks in the cartway of Liberty from the south curb of that street to the west side of Ninth, but there was testimony that pedestrians were also permitted to cross from the south side of Liberty to the east side of Ninth. Plaintiff was using the latter crossing when injured.

The traffic lights at this intersection were not in operation at the time of the accident.

The trial resulted in a verdict in favor of the plaintiff for $1,200, but the court below subsequently granted defendant's motion for judgment in his favor, notwithstanding the verdict, and we now have this appeal by the plaintiff from that judgment.

The ground upon which the judgment was entered in favor of the appellee upon the whole record was that appellant's testimony convicts him of contributory negligence as a matter of law. When the record is read in the light most favorable to appellant, as it must be upon this appeal, we are not convinced that the court below was justified in declining to enter judgment upon the verdict.

As usual, the parties gave conflicting versions of the accident. Appellant in his testimony, after describing his course from his place of employment to the south side of Liberty, continued: "Q. Now, tell us what happened there? Did you cross Liberty? A. I started to cross Liberty, yes, sir. Q. Tell us what you did. A. I looked to my left on Liberty Avenue until I got nearly half way across and then looked to the right and when I finished looking to my right I started looking back and the machine was that close to me I couldn't jump away from it. Q. When you looked down Liberty Avenue did you see anything? A. No, sir. Q. When you looked to the right when you got half way over did you see anything? A. Yes, a machine coming up from the Union Depot about a half a block away."

An excerpt from his cross-examination reads: "Q. And when you got started across from the curb to the middle of the street, when did you again look to the right or left? A. When I was almost half way across the street. Q. Well, between the time that you left the curb and started and got to the middle of the street what had you done in reference to looking? A. I looked to the left and looked to my right. Q. Where were you

when you did that, before you started? A. When I started across I looked to the left until I was almost half way and then looked to my right. Q. You mean that as you walked from the curb to the half way mark on Liberty Avenue you were constantly looking to the left? A. Yes, sir. Q. Mr. Wren, did you at any time look down Ninth Street while you were crossing the street and reaching the half way point? A. *No, only when I turned my head to look to the right.* ...... Q. Did you at any time look north into Ninth Street? A. *Only as my vision passed from west to east.* ...... Q. Were there any automobiles traveling south on Ninth Street? A. *I didn't see any."* (Italics supplied)

In fixing his location in Liberty Avenue when struck by appellee's car appellant testified: "Q. Now, when you got to the center of the street and looked to your right what did you see at that point? A. I seen about three automobiles about half a block away coming from the Union Depot. Q. And did those automobiles pass you? A. They stopped and helped get me out from under the machine. Q. When those automobiles—when you saw those automobiles half a block to the right where were you standing at that time? A. Standing almost in the middle of the street. I was walking. Q. Are there street car tracks there? A. Yes, sir. Q. With relation to the street car track where were you standing? A. Almost half way. I lacked about a foot and a half from being half way at the middle of the tracks. Q. There are four tracks [rails] on Liberty Avenue, is that right? A. Yes. Q. You mean you were in between the second and third rails or between some other rails? A. I was almost practically on the second rail. Q. Then as you crossed the street you had passed one rail and did you or did you not get past the second rail? A. I didn't get past the second rail, almost. Q. Then you hadn't reached the half way point on the street as yet? A. Very near. Q. Now at the time of this accident, Mr. Wren, were

you in motion or not? A. Yes, sir. Q. You were moving? A. Yes, sir."

Appellee testified he was traveling south on Ninth Street and that the accident occurred as he was making a left turn into Liberty. His version of the occurrence reads: "Q. Well, what did you do when you approached Liberty Avenue? A. I came to Liberty Avenue from Ninth Street. Traffic was very heavy and I *stopped until I could get a chance to make the turn into Liberty Avenue. Before I made the turn I noticed this man standing out in the street.* I got around the corner and blew my horn. He had passed my side of the car. A lot of cars were coming from the station and as I approached him he sort of stepped back into my car and I stopped. Q. Previous to this did you notice whether or not there were traffic lights there? A. There were traffic lights there, but not in use. Q. They weren't in operation at all? A. No. Q. When you came to the intersection of Liberty Avenue did you continue or did you stop? A. Yes, I had to stop at the Federal Reserve Bank. Q. Why? A. I couldn't get through for traffic. I had to wait. Q. And then did you continue to go around—you made a left turn, did you not? A. Yes, sir. Q. And in starting your car in what gear were you traveling? A. Second gear when the accident happened. Q. Did you see the plaintiff? A. I saw him out about the middle of the street, about the third car track [rail] or near it. ...... Q. Was the plaintiff at the time you first saw— where were you when you first saw the plaintiff standing in the street? A. I hadn't started to make the turn. I made the turn and he passed my side of the car after I made the turn and I blew the horn and when I got real close to him he sort of backed into me." (Italics supplied)

On cross-examination he described the position of his car immediately after the accident as follows: "Mr. Breeden: Q. Immediately after the accident, Mr. Miller, where was your car? A. Sitting right on Liberty Ave-

nue. Q. Well, on the south side or the north side of Liberty Avenue? A. Sitting directly heading to the Union Station. The Court: Q. Where in reference to the car track? A. Right in the dummy."

With respect to appellee's opportunity to see appellant he testified upon cross-examination: "Q. When you say you turned the corner you saw the man standing there? A. He was out crossing the street when I was making the bend. Q. You said you saw him standing there just beyond the second rail? A. When I was making the bend. Q. He was in plain sight? A. Yes, sir. Q. The street lights showed there? A. Yes."

Under the testimony of both parties, appellant was practically in the middle of Liberty when struck and appellee's car was stopped within a few feet.

The jury having resolved the conflict in the testimony, as to whether appellant was continuing across the street when hit or had stopped and then stepped back into appellee's car, in favor of appellant, that feature of the case requires no detailed discussion.

The court below in its opinion granting appellee's motion quoted the above italicized answers of appellant relative to looking north into Ninth Street and said: "Evidently he did not look for traffic coming out of Ninth Street. ...... If he had looked he must have seen the defendant's car. The street lights were burning. The defendant's car was there."

Granting that it was appellant's duty, under the circumstances, to look north on Ninth Street, we are unable to see how his failure to do so contributed to the accident. The most careful looking into Ninth Street by a pedestrian about to cross Liberty would have disclosed nothing more than appellee's car at a full stop in Ninth north of Liberty and without anything to indicate whether its driver was waiting to turn right or left upon Liberty.

Under appellee's description of the situation as it then existed we see no element in it which should have

caused a reasonably prudent pedestrian to apprehend danger from appellee's car. This is not a case in which a pedestrian stepped into the path of, and was struck by, a rapidly approaching car which he must have seen if he had looked. On the contrary, it is a case in which appellee, under his own version of the accident, knew before he started his car into Liberty Avenue that appellant had committed himself to the crossing and therefore had the right of way.

Appellee's defense was that he was proceeding carefully, in second gear and at a rate of fifteen miles per hour, when appellant, having safely passed his car, "sort of backed" into it. Appellant's story was that appellee's car came upon him so suddenly that he "couldn't jump away from it." This issue of fact was properly submitted to the jury and that tribunal rejected appellee's explanation of the accident. Notwithstanding appellant's admission that he failed to look carefully into Ninth Street, we think the question of his contributory negligence, was, in the light of the circumstances to which we have referred, a question for the jury.

Judgment reversed and here entered upon the verdict.